WILLIE C. SIMPSON,

                Plaintiff,

v.                                             Case No. 19-cv-1222-pp

GREEN BAY CORRECTIONAL INSTITUTION,
JEAN LUTSEY, SUE PETERS,
CAPTAIN VANLANEN, CAPTAIN BAUMAN,
and JOHN DOE,[1]

                Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A (DKT. NO. 2), DENYING AS MOOT DEFENDANTS' MOTION TO SCREEN COMPLAINT AND EXTEND TIME TO RESPOND TO AMENDED COMPLAINT (DKT. NO. 19), DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT (DKT. NO. 20) AND DENYING MOTION TO STRIKE (DKT. NO. 22)**

---

I. **Procedural History**

Willie C. Simpson, who is confined at Green Bay Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983 in Dane County Circuit Court. Dkt. No. 1 at 1. He sued state officials for: 1) denying him a parole hearing; 2) failing to properly treat him for human immunodeficiency virus; and 3) interfering with his mail. Id. The defendants

---

[1] In the caption of his amended complaint, page 1, the plaintiff named the Green Bay Correctional Institution, the governor of Wisconsin, the Secretary of the Department of Corrections and several individual defendants. Dkt. No. 2 at 1. On the second page of the amended complaint, in paragraph 4, he listed more individual defendants than he listed in the caption but did not list all the individual defendants against whom he makes allegations in the amended complaint. Dkt. No. 2 at 2. Because the original complaint now has been broken into three separate suits, the court has modified the caption of this case to contain only the names of the defendants against whom the court is allowing the plaintiff to proceed.

1

removed the case to the United States District Court for the Western District of Wisconsin and paid the $400 filing fee. Id. At the time they removed the case, the defendants also filed a motion to transfer the case to this district—the United States District Court for the Eastern District of Wisconsin. Id. Chief Judge James Peterson, the judge to whom the case was assigned in the Western District, concluded that the plaintiff should have filed three separate lawsuits—one related to parole, one related to medical treatment and one related to mail. Id. at 1–2.

Judge Peterson directed the defendants to choose which of the cases they wanted to apply the $400 filing fee to and whether they wished to remove the other two lawsuits (and pay additional filing fees). Id. at 2. The defendants responded that they wanted to remove all three cases and that they would pay the additional fees. Id. Judge Peterson told the plaintiff that if the defendants chose the medical treatment or mail lawsuits, he would have to amend his complaint. Id. The plaintiff filed an amended complaint naming the officials at Green Bay Correctional whom he alleged were involved in his medical care and mail claims. Id. Judge Peterson directed the clerk's office to file the amended complaint in two new cases, including this one. Id. Shortly thereafter, the defendants moved to transfer this case to this district. Dkt. No. 5. Judge Peterson granted that motion and transferred this case, along with the other case relating to the amended complaint (Case No. 19-cv-1221). Dkt. No. 14.

The amended complaint contains allegations related to all three lawsuits. See Dkt. No. 2. The plaintiff divided his claims into three distinct sections, however, so rather than requiring him to file an amended complaint containing only one claim, the court will screen "Sec. 3" of the plaintiff's statement of claim, which appears on pages thirteen through fifteen of the amended

2

complaint. (Dkt. No. 2 at 13-15.) The court will not address the remaining claims (or defendants) in the complaint because they are being pursued in other lawsuits.

## II. Screening Section 3 the Complaint (Dkt. No. 2)

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of

3

the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff explains that he has been diagnosed with HIV. Dkt. No. 2 at 14. He has several conditions resulting from the HIV—borderline anemia, toenail infections and weight loss. Id. at 14-15. Green Bay does not have a medical doctor qualified to diagnose or treat HIV or provide care for specialty medical conditions. Id. He says that Green Bay contracts with HIV specialist Dr. Vogelman (not a defendant) with U.W. Health Clinic in Madison. Id. at 14-15. The plaintiff says that between November 2018 and January 2019, Vogelman "repeatedly" recommended that the Department of Corrections and nurse practitioners Jean Lutsey and Sue Peters transport the plaintiff to U.W. Health Clinic immunology so that he could receive specialty care follow-up treatment for HIV and his other serious medical needs. Id. The plaintiff asserts, however, that the DOC and Green Bay decided to discontinue further transportation of the plaintiff to U.W. Health Clinic—or to any other clinic—to receive follow-up treatment for his HIV and other serious medical needs. Id.

The plaintiff says that Vogelman told him that as a result of the HIV, he suffers from borderline anemia—low white and red blood cells. Id. The anemia causes him to always be cold, and to suffer pain in his fee, legs, hands hips and other joints. Id.

4

The plaintiff says that HIV causes weight loss—"wasting"—and he says that between January 2016 and January 2019 he lost at least twenty pounds "due to HIV wasting from lack of adequate nutritional meals and calories." Id. The plaintiff contends that Vogelman recommended that the plaintiff receive Ensure three times a day and double-portion high calorie meals three times a day, but he says that Peters refused to provide him with either. Id. at 15. He says that this caused him to suffer the weight loss, as well as dizziness and weakness. Id.

The plaintiff also has been diagnosed with a toenail infection in the toes on both feet; this infection caused him "intense pain" in his toes and "created the risk of [accelerating] destruction of [his] immune system by HIV." Id. The plaintiff alleges that Captain Vanlanan and Captain Bauman interfered with the medical treatment Vogelman had prescribed for the toenail infections "by using GBCI security precaution policy to prevent [him] from possessing a foot basin to soak [his] fee in which caused [him] to suffer intense pain." Id.

The plaintiff was diagnosed with a skin condition that causes his skin to develop rash and to burn, itch and break out, causing him "intense pain." Id. He was prescribed A+D Ointment to treat the outbreaks, which he used for over four years, since January 2011. Id. He alleges that Peters and "HSM" Jean Lutsey discontinued the A+D Ointment, even though it was prescribed by a doctor, for no medical reason. Id. at 15. He says this caused him to suffer intense pain from skin outbreaks caused by the HIV. Id.

Finally, the plaintiff alleges that Peters and Lutsey have fabricated his medical records to make it look as if he has refused treatment for his serious medical needs, to cover up their deliberate indifference. Id.

For relief, the plaintiff asks for injunctive relief—he appears to want the court to require Green Bay, Peters and Lutsey to provide him transportation for out-patient treatment of his HIV and related medical issues and to order that they not deprive him of adequate treatment. Id. at 16. He also seeks monetary damages. Id. at 17.

C. Analysis

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Lockett v. Bonson, 937 F.3d 1016, 1022 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on a claim based on deficient medical care, the plaintiff "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." Id. (quoting Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)). The first element, an objectively serious medical condition, is satisfied if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." Id. at 1022-23 (quoting Pyles, 771 F.3d at 409). The plaintiff alleges that he has HIV and several conditions resulting from HIV. The court is satisfied that the plaintiff suffers from objectively serious medical conditions.

"Deliberate indifference is a subjective standard." Id. at 1023 (quoting Arnett, 658 F.3d at 751). To be found liable under the Eighth Amendment, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Whether a prison official acted with the requisite state of mind "is a question of

6

fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. (quoting Farmer, 511 U.S. at 842). To establish the requisite mental state, "[s]omething more than negligence or even malpractice is required." Id. (quoting Pyles, 771 F.3d at 409; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The plaintiff begins by alleging that the DOC and Green Bay decided to stop transporting him to Madison to receive follow-up care with Vogelman, despite Vogelman's repeated recommendations to the DOC, Lutsey and Peters that it was necessary. Though the plaintiff alleges that Vogelman made his recommendations to Peters and Lutsey, the plaintiff alleges it was the DOC and Green Bay that discontinued the care. Because the plaintiff alleges that Green Bay doesn't have anyone on staff trained to treat or manage HIV and that his care for HIV isn't sufficient, the plaintiff has sufficiently alleged that *someone* showed deliberate indifference to his treatment needs by terminating the transportation. But he does not say *who* at the DOC or Green Bay made this decision.

Section 1983 allows a plaintiff to sue a "person" who violates his constitutional rights under color of state law. The Wisconsin Department of Corrections and Green Bay Correctional Institution are not "persons." Booth v. Wisconsin Department of Corrections, No. 20-C-1061, 2020 WL 4464586, at *2 (E.D. Wis. Aug. 4, 2020). See also, White v. Wis. Dep't of Corr., No. 19-c-1515, 2019 WL 6840707, at *1 (E.D. Wis. Dec. 16, 2019); Castillo v. Cook Cty. Mail Room Dept., 990 F.2d 304, 307 (7th Cir. 1993); Dobbey v. Ill. Dep't of Corrs., 574 F.3d 443, 444 (7th Cir. 2009). So the plaintiff cannot proceed against the

7

Department of Corrections or Green Bay on this claim, and the court will dismiss Green Bay Correctional Institution as a defendant.

Perhaps the plaintiff does not know the name of the person at Green Bay who made the decision to terminate the transport. To preserve the plaintiff's claim that someone showed deliberate indifference by terminating his case care with a HIV specialist, the court will add a "John Doe" placeholder to the list of defendants. See Donald v. Cook Cty. Sherriff's Dept., 95 F.3d 548, 559 (7th Cir. 1996). Once the defendants answer the complaint and the court enters a scheduling order, the plaintiff may use discovery to find out who was responsible for the decision to stop taking him to the specialist.

The plaintiff alleges that Vanlanen and Bauman denied him access to a basin to soak his infected toes, citing institution security policy. There may be a policy that prohibited Vanlanen and Bauman from giving the plaintiff a basin. But at this early stage, the court concludes that the plaintiff has stated sufficient facts to allege that the two officers were deliberately indifferent to his pain and suffering regarding the toenail infection.

The plaintiff alleges that Peters disregarded Vogel's instructions to give him Ensure and double-portion high calorie meals three times a day. At this stage, this is sufficient to allow the plaintiff to proceed on a deliberate indifference claim against Peters. He also alleges that Peters and Lutsey discontinued the ointment that helped with his skin problems, despite his having a prescription from a doctor. That allegation is sufficient to allow him to proceed on a deliberate indifference claim against Peters and Lutsey.

While it is a closer call, the court also will allow the plaintiff to proceed on his claim that Peters and Lutsey fabricated his medical records to cover up their deliberate indifference. Dkt. No. 2 at 15. While lying is not necessarily a

8

constitutional violation, Larry v. Meisner, No. 16-cv-1108, 2016 WL 5390882, at *5 (E.D. Wis. Sept. 27, 2016), lying to cover up constitutional violations could prevent a plaintiff from seeking relief for valid harm. The plaintiff has not alleged a specific "cognizable legal harm," Doe v. Welborn, 110 F.3d 520, 523 (7th Cir. 1997), but at this early stage, the court cannot tell whether the allegations, if true, would result in his being unable to pursue legitimate constitutional claims. The court will allow the plaintiff to proceed against Peters and Lutsey on this claim.

### III. Motion for Screening Order and Extension of Time to Respond (Dkt. No. 19)

Two weeks after Judge Peterson granted the defendants' motion to transfer this case to the Eastern District, the defendants filed a motion asking the court to screen the complaint and to give the defendants thirty days from the date of the screening order to respond. Dkt. No. 19. The court was not able to screen the complaint as quickly as it would have liked, but it now has done so. The defendants had no need to ask for time to respond—under the Memorandum of Understanding between this court and the Wisconsin Department of Justice, the defendants will have sixty days to answer or otherwise respond. If the defendants need additional time to respond once they've been served with the amended complaint, they need only ask. The court will deny the motion as moot.

### IV. Motion for Default and Motion to Strike Motion for Default (Dkt. Nos. 20, 22)

The plaintiff filed a motion asking the court to enter default because he believes the defendants did not timely answer the amended complaint. Dkt. No. 20. The plaintiff is mistaken.

9

Federal Rule of Civil Procedure 12(a) requires a defendant to answer within twenty-one days after being *served* with the complaint. The defendants have not yet been served with the complaint, because in cases where a plaintiff asks to proceed without prepaying the filing fee, the district court must authorize the commencement of the lawsuit. 28 U.S.C. §1915(a)(1). The court cannot authorize the commencement of the lawsuit until it has screened the complaint, as required under 28 U.S.C. §1915A(a). Only after the court screens the complaint to make sure that it states a claim does the court order the complaint served on the defendants. Now that the court has screened the complaint, it will require service on the defendants; as noted above, the defendants have sixty days to answer or otherwise respond to the complaint under an agreement between the court and the Department of Justice. The court will deny the plaintiff's motion for default.

The defendants have asked the court to strike the plaintiff's motion for default. Dkt. No. 22. They indicate that the Court of Appeals for the Seventh Circuit has sanctioned the plaintiff, barring him "from filing further civil suits in the courts of this district" until he pays a $1,000 fine. Id. at ¶10; Dkt. No. 22-2 at 4. The defendants state that

> [i]n situations in which a defendant removes a state-court action filed by a plaintiff under a federal-court filing bar, at least one district court in this circuit has interpreted the sanction order to generally limit the plaintiff's ability to file documents proactively, i.e. file motions on his own behalf, but it has allowed the plaintiff to file responses to motions filed by the defendant or to court directives. (*See Simpson v. Walker*, Case No. 18-CV-467, dkt. 30:3-4 (W.D. Wis. June 25, 2019) (citing *Balele v. Olmanson*, 13-cv-jdp, 2017 WL 90387, at *1 (W.D. Wis. Jan. 10, 2017)).

Dkt. No. 22 at ¶11. The defendants characterize the plaintiff's motion for entry of default as a "proactive" motion and ask the court either to strike it or to deny it. Id. at ¶12.

The Seventh Circuit's March 30, 2017 order required that until the plaintiff paid the full $1,000 fine, he was "barred from filing further civil suits in the courts of this circuit in accordance with *Support Sys. Int'l v. Mack*, 45 F.3d 185 (7th Cir. 1995), and any papers he submits will be returned unfiled." Dkt. No. 22-2 at 2. The plaintiff has not filed a civil suit in a court of the Seventh Circuit. He filed this suit in state court. The *defendants* removed it to a court of this circuit. Chief Judge Peterson in the Western District has interpreted the Seventh Circuit's language to require district courts to return any papers the plaintiff files that are not in response to a defense filing or a court order, regardless of whether the plaintiff chose to be in federal court. It is not clear to this court that the Seventh Circuit intended its order to extend so far.

The defendants may suspect that the plaintiff deliberately files federal claims in state court to get around the Seventh Circuit's bar. They may be right. If they provide the court with proof supporting that suspicion (for example, evidence that the plaintiff has filed multiple state lawsuits raising federal constitutional claims, which the defendants have removed to federal court without objection from the plaintiff), the court may reconsider its position. For now, the court denies the motion to strike.

### IV.    Conclusion

The court **DENIES AS MOOT** the defendants' motion to screen the complaint and for an extension of time to respond. Dkt. No. 19.

The court **DENIES** the plaintiff's motion for default. Dkt. No. 20.

The court **DENIES** the defendants' motion to strike the plaintiff's motion for default judgment and response to entry of default. Dkt. No. 22.

11

The court **ORDERS** that defendant Green Bay Correctional Institution is **DISMISED** as a defendant.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Lutsey, Peters, Vanlanen and Bauman. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 30th day of September, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**