# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIE C. SIMPSON,

<blockquote>Plaintiff,</blockquote>

v.                                              Case No. 19-cv-1222-pp

CAPTAIN VANLANEN, JEAN LUTSEY,
SUE PETERS, and CAPTAIN BAUMAN,

<blockquote>Defendants.</blockquote>

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PROPOSED TEMPORARRY RESTRAINING ORDER (DKT. NO. 24), MOTION TO SANCTION DEFENDANTS AND THEIR ATTORNEY (DKT. NO 28) AND MOTION PURSUANT TO FED. R. CIV. P. 55(A) FOR THE CLERK OF COURT TO ENTER THE DEFENDANTS DEFAULT (DKT NO. 45), DENYING DEFENDANTS' MOTION TO STRIKE AND TO RECONSIDER (DKT NO. 30), ORDERING SERVICE ON DEFENDANT SUE PETERS AND DIRECTING THE CLERK TO ADD DEFENDANT "JOHN DOE"**

---

Plaintiff Willie C. Simpson is incarcerated at Green Bay Correctional Institution and is representing himself. On September 30, 2020, the court screened his amended complaint and allowed him to proceed on Eighth Amendment deliberate indifference claims against Captains Vanlanen and Bauman, nurse practitioners Jean Lutsey and Sue Peters and a John Doe defendant. Dkt. No. 23. In the same order, the court denied the plaintiff's motion for default judgment and explained that the defendants had sixty days from the date of that order to respond to the amended complaint. Id. at 10.

The parties have since filed several motions. The plaintiff has filed a motion for a temporary restraining order (TRO), dkt. no. 24, a motion asking the court to impose sanctions on the defendants, dkt. no. 28, and for the

1

second time a motion for entry of default, dkt. no. 45. The defendants have asked the court to strike the plaintiff's motions for a TRO and sanctions and to reconsider its previous ruling declining to strike the plaintiff's filings. Dkt. No. 30.

## I.  Procedural History

In the previous order, the court thoroughly explained the full procedural history of this litigation. The court explained:

> [The plaintiff] . . . filed a complaint under 42 U.S.C. §1983 in Dane County Circuit Court. Dkt. No. 1 at 1. He sued state officials for: 1) denying him a parole hearing; 2) failing to properly treat him for human immunodeficiency virus; and 3) interfering with his mail. Id. The defendants removed the case to the United States District Court for the Western District of Wisconsin and paid the $400 filing fee. Id. At the time they removed the case, the defendants also filed a motion to transfer the case to this district—the United States District Court for the Eastern District of Wisconsin. Id. Chief Judge James Peterson, the judge to whom this case was assigned in the Western District, concluded that the plaintiff should have filed three separate lawsuits—one related to parole, one related to medical treatment and one related to mail. Id. at 1-2.

> Judge Peterson directed the defendants to choose which of the cases they wanted to apply the $400 filing fee to and whether they wished to remove the other two lawsuits (and pay additional filing fees). Id. at 2. The defendants responded that they wanted to remove all three cases and that they would pay the additional fees. Id. Judge Peterson told the plaintiff that if the defendants chose the medical treatment or mail lawsuits, he would have to amend his complaint. Id. The plaintiff filed an amended complaint naming the officials at Green Bay Correctional whom he alleged were involved in his medical care and mail claims. Id. Judge Peterson directed the clerk's office to file the amended complaint in two new cases, including this one. Id. Shortly thereafter, the defendants moved to transfer this case to this district. Dkt. No. 5. Judge Peterson granted that motion and transferred this case, along with the other case relating to the amended complaint (Case No. 19-cv-1221). Dkt. No. 14.

2

Dkt. No. 23 at 1–3. The court screened only "Sec. 3" of the amended complaint—pages thirteen through fifteen, which contained the plaintiff's medical claims. Id. at 2-3. In the September 30, 2020 order, it required the defendants to answer or otherwise respond within sixty days. Id. at 12.

Judge Peterson issued the order transferring the case to this district on August 21, 2019. Dkt. No. 14. Two weeks later, the defendants filed a motion asking the court to issue a screening order and asking for an extension of time to answer or otherwise respond. Dkt. No. 19. The court did not promptly rule on that motion, nor did it promptly screen the amended complaint. On January 17, 2021, the court received from the plaintiff a motion for entry of default, alleging that almost two years had passed between the date the case was removed from state court and the date the plaintiff filed the motion. Dkt. No. 20. The defendants moved to strike that motion. Dkt. No. 22. They noted that based on the plaintiff's history of frivolous litigation, on March 30, 2017 (a couple of years before the plaintiff filed this suit), the Seventh Circuit Court of Appeals had sanctioned the plaintiff, imposing a $1,000 fine and ordering that until he paid that fine, "[the plaintiff was] barred from filing further civil suits in the courts of this circuit in accordance with *Support Sys. Int'l v. Mack*, 45 F.3d 185 (7th Cir. 1995), and any papers he submits will be returned unfiled." Id. at ¶10; Dkt. No. 22-2 at 4. The defendants asked the court to strike the plaintiff's motion for default judgment, characterizing it as "a proactive motion subject to the filing bar." Dkt. No. 22 at ¶11.

In its September 30, 2020 screening order, the court denied that motion. Dkt. No. 23 at 11. The court pointed out that while the Seventh Circuit had barred the plaintiff from filing civil suits in the Seventh Circuit, the plaintiff had not filed a civil suit in the circuit—he had filed suit in *state* court, and it was the *defendants* who brought the case to federal court. Id. The court concluded that it was "not clear" whether "the Seventh Circuit intended its order to extend so far" as to bar the plaintiff from proceeding on a case removed from state court to federal court by the defendants' motion. Id. The court conceded that it was possible "that the plaintiff deliberately files federal claims in state court to get around the Seventh Circuit's bar." Id. The court explained that it "[might] reconsider its position" if the defendants could provide proof that the plaintiff deliberately filed federal claims in state court to circumvent the Seventh Circuit's filing bar. Id.

On November 6, 2020, the plaintiff paid the $1,000 fine the Seventh Circuit had imposed as a sanction. See Seventh Circuit Case No. 16-3436, Dkt. No. 22. He filed a motion asking the Seventh Circuit to rescind the sanction because he had paid the fine. Id. at Dkt. No. 23-1. The Seventh Circuit did not grant the plaintiff's motion, noting that the filing restriction automatically lifted when the plaintiff paid the $1,000 fine. Id. at Dkt. No. 24-1 ("[T]he record reflects that on November 6, 2020, this court received a complete payment of $1,000, thus lifting the March 2017 filing restriction."). The Seventh Circuit declined to take any further action on the plaintiff's motion to rescind the sanction. Id.

## II.     Motion for TRO/Preliminary Injunction (Dkt. No. 24)

On October 19, 2020, just over two weeks after this court issued its order screening the amended complaint, the plaintiff moved for an emergency TRO and sought leave to extending the TRO pending a hearing on a permanent injunction. Dkt. No. 24 at 1. In a supporting affidavit, the plaintiff averred that suffers from human immunodeficiency virus (HIV) and alleged that Green Bay did not employ a doctor trained in diagnosing or treating HIV. Dkt. No. 26 at ¶7. In his motion for injunctive relief, he asserted that his HIV-positive status increased the likelihood of death from COVID-19 infection. Dkt. No. 24 at 1. He alleged that he was housed under conditions that exposed him to substantial risk of future exposure to COVID-19. Id. at 2. He swore in the supporting affidavit that it was impossible for him to practice social distancing; he stated that in segregation, where he was residing, there were several COVID-positive inmates, but they were required to share telephones and that guards picked up and passed out food, supplies and medication after having contact with COVID-positive inmates. Dkt. No. 26 at ¶¶17–18. The plaintiff alleged that least one guard refused to wear a facemask or gloves when distributing the plaintiff's medication, leaving him unable to take his medication; he alleged that numerous other guards had come to his cell to distribute food and medication and to serve papers, but had refused to "practice PPE," exposing him to the risk of COVID infection. Id. at ¶¶20–21. He alleged that several inmates had refused to report their symptoms, facilitating the spread of COVID-19 within Green Bay. Id. at ¶23. He stated that he was concerned he would become

5

infected with COVID-19 and die before the deadline for the defendants to respond to his complaint. Id. at ¶26.

The plaintiff also averred in the affidavit that Green Bay staff had interfered with his HIV treatment regimen. Id. at ¶9. He stated that several segregation guards, who worked with the Health Services Unit, had access to the plaintiff's medical information so that they could distribute his medication. Id. at ¶11. He asserted that those guards refused to provide him his HIV medication between May 2020 and the present. Id. He asserted that since May 2020 he had lost over thirty pounds, suffered pain in his joints, had skin rashes and weakness, due to his medication being discontinued. Id. at ¶12.

The plaintiff asked the court to do the following: 1) prohibit all security personnel and "non-health care medical professionals" at Green Bay from accessing, using or disclosing his medical information, including "access to plaintiff['s] medications"; 2) prohibit the Department of Corrections, Green Bay and "all DOC prison divisions" from housing the plaintiff in conditions that subject him to substantial risk of future exposure to COVID-19, by ordering that he be transferred to the Wisconsin Resource Center, a Department of Health Services medical facility or a state or federal facility that does not place him at risk of future COVID-19 infection and which has a "doctor trained in treating and diagnos[]ing HIV, and COVID-19"; and 3) prohibit numerous named Green Bay prison officials (none of whom are defendants) from coming within 100 yards of the plaintiff or having any physical contact with him. Dkt. No. 24 at 2–3. He asserts that Federal Rule of Civil Procedure 65 allows a court

6

to issue a preliminary injunction or, in some cases, a TRO without written or oral notice to the adverse party. Id. at 3.

The defendants noted in their response that they had asked the plaintiff to sign a medical release so they could obtain his medical records (to review his allegations about not receiving needed medical supplements and other HIV treatment). Dkt. No. 31 at 4-5. They assert that the plaintiff refused to sign a release, so they cannot review his medical records or respond to his allegations that he was not receiving certain medication or treatment. Id. The plaintiff replied that even if the defendants decided to provide him nutritional supplements and follow-up HIV treatment, that would not moot his request for injunctive relief. Dkt. No. 36.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter, 555 U.S. at 22). If the plaintiff can establish those three factors, the court then must balance the harm to each party and to the public

7

interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction (including a TRO) is circumscribed by the Prison Litigation Reform Act (PLRA). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff appears to base his request for injunctive relief on two different sets of facts. On the one hand, he argues that he is being denied treatment for HIV. On the other, he argues that being at Green Bay puts him at greater risk for being infected with COVID-19. Setting aside whether the plaintiff can show that his underlying lawsuit has some likelihood of success on the merits, the relief the plaintiff requests is either unrelated to the concerns that give rise to his motion, broader than is necessary to correct the alleged harm or more intrusive than is necessary to correct the harm.

8

The plaintiff asks the court to prohibit security and "non health care medical" personnel from accessing, using or disclosing his medical information. Presumably he makes this request in relation to his allegation that certain guards in the segregation—guards who had access to his medical information so that they could distribute his HIV medications—had refused to provide him that medication. It is not clear how denying prison guards access to the plaintiff's medical information will either ensure that he receives his HIV medication or protect him from exposure to COVID-19. He has not explained what irreparable injury he will suffer from security staff and prison guards having access to his medical information.

The plaintiff next asks the court to order that he be transferred to another institution—the Wisconsin Resource Center, a Department of Health Services medical facility or a state or federal facility which does not put him at risk of infection with COVID-19. The defendants argue that the DOC lacks the authority to transfer the plaintiff to Department of Health Services facilities, including the Wisconsin Resource Center, dkt. no. 31 at 5, which is designed to house state prisoners "in need of specialized mental health services." See https://www.dhs.wisconsin.gov/wrc/index.htm. The plaintiff has not alleged that he has mental health issues that make him a good candidate for transfer to the WRC. Nor has he demonstrated that the Department of Health Services has agreed to accept the plaintiff into any of its facilities. The court does not have the authority to order the Department of Health Services to accept a specific prisoner into a specific facility. Nor does the court have the authority to

9

order a person incarcerated as the result of a state sentence to be transferred to a *federal* facility. Federal prisons are for people convicted of committing federal crimes. Finally, the court does not have the authority to order the Department of Corrections to order an incarcerated person moved from one DOC institution to another—even if there were an institution that presented no risk that the people incarcerated there might become infected with COVID-19.

To that point—the plaintiff asks the court to grant him injunctive relief based on *possibilities* of harm without providing evidence to suggest it is *likely* he will suffer harm. The plaintiff may be right that he could experience severe symptoms if he becomes infected with COVID-19, but he has presented no evidence that any other DOC institution would present less risk of infection. The plaintiff provides no information to explain why he believes the WRC, another Department of Health Services facility or any other institution would better accommodate his health conditions and reduce his chances of contracting COVID-19.

It is an unfortunate reality that the virus has spread easily within prisons because of some of the factors the plaintiff has identified—large numbers of people living communally, unable to socially distance or mask or wash frequently or clean surfaces. But the defendants explain at length the precautions Green Bay has taken to reduce inmate-to-inmate spread of COVID-19, including requiring facemasks for all incarcerated persons and staff, reducing or restricting unnecessary contact between incarcerated persons, quarantining infected incarcerated persons and incarcerated persons who

refuse to be tested for COVID-19 and screening all incarcerated persons and staff at the prison. Dkt. No. 31 at 5–6. This is in line with protective measures that several Wisconsin prisons have taken to keep incarcerated persons and staff safe. See, *e.g.*, Stevens v. Carr, No. 20-C-1735, 2021 WL 39542, at *4–5 (E.D. Wis. Jan. 5, 2021) (describing protective measures at Oshkosh Correctional Institution to prevent or reduce the spread of COVID-19, including providing incarcerated persons with facemasks, locking down the prison at times, testing all incarcerated persons multiple times and isolating incarcerated persons from one another). Green Bay, like all institutions, must be allowed to tailor its restrictions and safety protocol in a way that makes sense for that facility and the people incarcerated there. As of the date he filed his motion, the plaintiff had not contracted COVID-19. Although he need not become infected before he may seek relief, he does not give any reason to believe his current risk of infection is higher at Green Bay than at any other institution, including Department of Health Services facilities.

Finally, the plaintiff asked the court to prohibit several Green Bay guards from coming within 100 yards of him or having physical contact with him. These are the guards whom he claims delivered food, medication, papers and other items to him without practicing "PPE," by which the court understands him to mean that they did not wear personal protective equipment such as masks, shields or gloves. This request is not "narrowly drawn," as the PLRA requires; it is impractical for an institution to require seventeen correctional officers to stay 100 feet away from an incarcerated person and to have no

11

physical contact with him. If, as the plaintiff alleges, certain guards are not following the institution's COVID protocols, the plaintiff has a remedy—he may file a grievance and ask prison management to address the issue.

The plaintiff has not met several criteria for injunctive relief. He seeks relief for possible, not certain, harm and seeks unnecessarily broad relief for concerns that could be resolved by less intrusive means than injunctive relief. The extraordinary relief of a preliminary injunction is not warranted in these circumstances. The court will deny plaintiff's motion for a TRO or preliminary injunction.

### III.    Motion for Sanctions (Dkt. No. 28)

Three days after the court received the plaintiff's motion for injunctive relief, it received from the plaintiff a document titled "Plaintiff Motion the Court to Sanction Defendants and Their Attorney for Bad Faith Conduct Fraud Upon the Court, Pursuant to the Courts Inherent Power." Dkt. No. 28. The plaintiff asserted that he was in segregation and confined to his cell twenty-four hours a day. Id. at ¶1. He stated that defendants Vanlanen and Bauman controlled the delivery of his mail, and alleged that they used their positions as prison security supervisors "to delay and obstruct delivery" of his mail, including "consent to proceed before magistrate judge form and any notice of appearance." Id. The plaintiff asserted that the defendants "perpetuate a fraud upon the court by certifying that plaintiff received a copy of these documents," asserting that as of the date he filed the motion, he had not received either document. Id. at ¶¶1–2. He noted that in the court's screening order, it had

cautioned him that his case could be dismissed if he did not comply with deadlines. Id. at ¶3. He asserted that this caution "signal[ed] the defendants, whom have control of [his] mail, to delay and obstruct its delivery to cause plaintiff to unknowingly fail to meet a court deadline so that the defendants may defeat plaintiff claims obviously." Id. The plaintiff asserted that the delaying and obstructing of his mail constituted mail fraud under Wisconsin law. Id. at ¶4.

The plaintiff stated that he had filed a complaint with the Brown County District Attorney against defendants Vanlanen and Bauman, and against institutional complaint examiner Jodi Perttu, Green Bay Warden Dylon Radtke and "business office person T. DeBruin" (none of whom are defendants) for mail fraud and that these individuals were being investigated by the DA's office. Id. at ¶5. He said that the complaint was pending in state court. Id.

The plaintiff asked the court to strike the defendants' notice of appearance and consent to magistrate judge authority form because he never received them. Dkt. No. 28 at 1. He also asked the court to strike "all future filings in this case." Id.

With this motion, the plaintiff filed an affidavit, reiterating the allegations from the motion. Dkt. No. 29. At the end of the affidavit, the plaintiff wrote, "Sworn under penalty of perjury of 28 USC 1740." Id.

The defendants respond that the plaintiff's motion for sanctions is "unfounded and frivolous." Dkt. No. 35 at 1. The defendants interpret the plaintiff's motion as alleging that he never received a blank Consent to Proceed

13

Before a Magistrate Judge form to complete and return. Id. at 3. The defendants contend that that assertion is clearly false because the plaintiff returned to the court a completed version of that form. Id. (citing Dkt. No. 18). The defendants also note that the only notice of appearance they filed was in the Western District of Wisconsin, on July 2, 2019. Dkt. No. 35 at 3; Dkt. No. 3. The defendants point out that the plaintiff did not explain why he waited over a year to bring this motion and they contend that he provides no evidence to support his accusation of fraud. Id. at 4. They question how the plaintiff knows the defendants certified that he received a copy of their notice of appearance if, as he says, he never received that document. Id. Finally, they observe that the plaintiff did not explain how not receiving a notice of appearance impacted the plaintiff's ability to meet deadlines, pointing out that he has received other documents (including the court's screening order) and has filed several documents. Id.

The court has the inherent power to sanction a party "for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991). Before imposing sanctions, the court "must find that the party 'willfully abused the judicial process or otherwise conducted litigation in bad faith.'" Jackson v. Murphy, 468 F. App'x 616, 619–20 (7th Cir. 2012) (quoting Salmeron v. Enter. Recovery Sys., Inc., 579 F.3d 787, 793 (7th Cir. 2009)). An appropriate sanction must be "proportional to the gravity of the offense." Id. at 619 (citing Williams v. Adams, 660 F.3d 263, 265–66 (7th Cir. 2011)).

14

The defendants interpret the plaintiff's motion as asserting that he never received a blank form for consenting to proceeding before a magistrate judge. If that were the plaintiff's argument, the court agrees that it would be frivolous because the court received from the plaintiff a completed and signed version of that form on September 4, 2019. Dkt. No. 18. The court believes, however, that the plaintiff means that he never received *the defendants'* completed form consenting to proceed before a magistrate judge.

Counsel for the defendants entered their notice of appearance on July 2, 2019, before the case had been transferred to the Eastern District of Wisconsin. Dkt. No. 3. They filed a completed consent to proceed before a magistrate judge form on August 23, 2019, one day after the case was transferred here. Dkt. No. 17. The certificates of service accompanying those two documents certify that defense counsel *sent* those documents to the plaintiff at Green Bay, and that is all that they were required to certify. Dkt. Nos. 3-1, 17-1. This court has no evidence and no reason to believe that defense counsel lied about having mailed the documents to the plaintiff, or that they submitted the certifications in bad faith.

Moreover, as the defendants point out, the only way the plaintiff could know what the certificates of service say is if he did, in fact, receive the documents. Either the plaintiff received the documents—in which case it is not clear why he is asking this court to take the drastic remedy of imposing sanctions—or he did not receive them and is assuming that the defendants fraudulently certified that he received them—in which case, he is asking this

15

court to take the drastic remedy of imposing sanctions based on an assumption. Either way, it is the *plaintiff* who appears to be engaging in misconduct, not defense counsel.

Nor has the plaintiff provided any evidence to support his assertion that the defendants withheld the plaintiff's mail from him, preventing him from receiving the two documents. The plaintiff insists that the defendants withheld his mail but does not explain what makes him believe that they did so. He does not allege that he saw the defendants (or anyone else) confiscating his mail or that he overheard someone discuss his mail being withheld. Nor does he allege that there was a pattern of his not receiving legal mail that he knew someone had sent him. He says only that he did not receive two documents sent to him in July and August 2019 and concludes from that fact that the defendants withheld them from him. The plaintiff's affidavit is not evidence that the defendants intentionally withheld the plaintiff's mail, and there is no other evidence suggesting that they did.

Even if the plaintiff never received defense counsel's notice of appearance and the defendants' completed consent form, he cannot demonstrate that he suffered any harm as a result. The plaintiff clearly has received other documents from defense counsel, including their motion to transfer the case to this district. Dkt. No. 5. He obviously received that document because on July 23, 2019, he asked the Western District of Wisconsin for additional time to respond to it. Dkt. No. 6. Clearly he knows the identities of defense counsel— he named them in his recent filings. Dkt. No. 28 at 1; Dkt. No. 45 at 2. As the

16

defendants point out, he has not explained why he waited over a year to advise the court that he never received notice of those attorneys' appearances. Because the plaintiff has known the identities of defense counsel since at least July 2019, he cannot demonstrate that his alleged failure to receive their notice of appearance caused him to miss deadlines or suffer other prejudice in this lawsuit.

The same is true of the plaintiff's alleged failure to receive the defendants' completed form consenting to proceed before a magistrate judge. District judges, like the undersigned, are appointed under Article III of the Constitution and may make final decisions in any case over which a federal court has jurisdiction. A magistrate judge may make final decisions in a civil lawsuit only if all parties consent. 28 U.S.C. §636(c)(1). As the court discusses in Section V below, defendant Peters has not yet been served with the plaintiff's complaint, has not filed an appearance and has not had a chance to indicate whether or not she consents to magistrate judge jurisdiction. The plaintiff does not have a legal right to have a magistrate judge decide his case, so whether he received the defendants' consent form or not, there is nothing he could have done with it or about it.

The plaintiff correctly notes that the court warned the plaintiff in the screening order that if he did not comply with court deadlines, his case could be dismissed. Dkt. No. 23 at 13. The plaintiff has not missed a deadline or failed to comply with any court order. Nor does he assert that there are orders this court has issued that he did not receive. The plaintiff's most recent filings,

including his motions and his responses to the defendants' motions, suggest the opposite—that he has received every filing in this case since at least the screening order. Dkt. No. 45 at 2 (recounting the recent history of this case). If the plaintiff did not receive the defendants' notice of appearance or magistrate judge consent form, he may ask the court for copies of those documents. But nothing in those documents affected his ability to meet deadlines, comply with court orders or pursue this lawsuit.

The plaintiff has not shown that the defendants willfully withheld his mail or conducted this litigation in bad faith. There is no basis to sanction the defendants by striking their notice of appearance, magistrate judge consent form or any future filings. The plaintiff's motion for sanctions is frivolous. Given the plaintiff's history of frivolous litigation, the court warns the plaintiff that it has the authority to sanction him if he files further frivolous motions. The court will deny the motion for sanctions.

## IV. Defendants' Motion to Strike and Reconsider (Dkt. No. 30)

The defendants have asked the court to deny the plaintiff's motions for a TRO and sanctions and to strike both motions under the Seventh Circuit's filing ban. Dkt. No. 30 at 1–2. The defendants also ask the court to "reconsider its ruling that [the plaintiff] may proactively file motions in this case under Federal Rule of Civil Procedure Rule 54(b)." Id. at 1-2 (citing Dkt. No. 23 at 11). The defendants assert that under In re Matter of Skupniewitz, 73 F.3d 702, 705 (7th Cir. 1996), the Seventh Circuit's filing ban applies not only to cases the plaintiff files in federal court but also to cases he brings in state court and

18

which the defendants remove to federal court. Id. at 5. The defendants contend that the plaintiff may file papers only "'in a purely defensive mode' or 'in response to any motion made by the defendants which could result in a final judgment.'" Id. (quoting Skupniewitz, 73 F.3d at 705–06). The defendants conclude that because the plaintiff's motions for a TRO and for sanctions are "proactive motions," the filing ban bars him from bring those motions. Id.

This issue is moot. The court is denying the plaintiff's motions for a TRO and for sanctions on their merits. There no longer is a filing ban in place; as the court has noted, the plaintiff has paid the $1,000 fine. See Seventh Cir. Case No. 16-3436, Dkt. No. 24-1. The court will deny as moot the defendants' motion to strike and to reconsider its previous ruling.

## V. Motion for Entry of Default (Dkt. No. 45)

On November 30, 2020, the court received the defendants' answer to the amended complaint. Dkt. No.41. Eight days later, on December 8, 2020, the court received from the plaintiff a motion asking the clerk of court to enter default under Fed. R. Civ. P. 55(a). Dkt. No. 45. The plaintiff stated that in its September 30, 2020 screening order, the court "ordered the defendants to appear within 60 days and answer." Id. at ¶2. According to the plaintiff, as of December 6, 2020, the defendants had not entered a notice of appearance or answered the amended complaint, which "constitute[s] failure to answer and defend." Id. at ¶3. He asserted that defense counsel could not "legally answer the complaint on behalf of defendants . . . without first giving the court notice of appearance on behalf of the defendants," and concludes that because they

19

did not file another notice of appearance, the answer was valid and the defendants had defaulted. Id. at ¶4.

The court's September 30, 2020 order did not order the defendants to *appear* within sixty days. The order states: "Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days." Dkt. No. 23 at 12. As the court explained above, defense counsel already had appeared—they appeared in July 2019, over two years before the court issued its order requiring them to answer. Sixty days from September 30, 2020, was Sunday, November 29, 2020. Because the last day of the sixty-day period was a Sunday, the defendants had until the next business day to file their answer. See Fed. R. Civ. P. 6(a)(1). The defendants complied with the screening order by filing their answer to the complaint on November 30, 2020—the final day of the sixty-day period. Dkt. No. 41. The defendants have not defaulted.

In his reply brief in support of his request for default, the plaintiff insisted that defense counsel lied when they said in their response that they entered their notice of appearance for the defendants, because they did not enter an appearance on behalf of defendant Sue Peters. Dkt. No. 49. He says the court should enter default against Peters, on whose behalf the defendants have not appeared or submitted a responsive pleading. Id. at 3.

As discussed above, the defendants entered their notice of appearance on July 2, 2019. Dkt. No. 3. That notice of appearance applied to defendants Vanlanan, Lutsey and Bauman only. A footnote in the notice of appearance

20

says that counsel from the Department of Justice "do not appear for defendant Sue Peters." Id. at 1 n.1. The footnote explains that "Ms. Peters is not employed by the Wisconsin Department of Corrections but rather is employed through an agency contract with Maxim Healthcare Services." Id.

The plaintiff is correct that defendant Peters currently is not represented and has not answered the complaint, but that is because she never received it—and that is the *court's* error, not defense counsel's. Because Peters is not employed by the Wisconsin Department of Corrections and is not represented by the Wisconsin Department of Justice, the court should have ordered the U.S. Marshals Service to serve her. The court mistakenly ordered service on *all* defendants through the Memorandum of Understanding with the Department of Justice, which meant that Peters never received the complaint. The court will remedy this by ordering the U.S. Marshals Service to serve defendant Peters. Peters will have sixty days from the date of service—not the date of this order— to appear and answer the amended complaint.

Because defendants Vanlanen, Lutsey and Bauman have answered the complaint, and defendant Peters has not yet been served with the complaint, there is no basis to enter default against any defendant. The court will deny the motion for entry of default.

## VI.     John Doe Defendant

As a final matter, the court previously stated it would add a "John Doe" placeholder to the list of defendants as a temporary stand-in for the person responsible for terminating the plaintiff's transport to Madison for HIV

treatment with Dr. Vogelman. Dkt. No. 23 at 8. But no John Doe defendant is listed on the electronic docket. The court will direct the Clerk of Court to add the John Doe placeholder to the docket. Once defendant Peters appears and answers the amended complaint, the court will enter a scheduling order providing a deadline by which the plaintiff must use discovery to identify the proper name of the John Doe defendant. **The parties must not conduct discovery until the court has entered the scheduling order**.

VII. **Conclusion**

The court **ORDERS** that the plaintiff's motion for a emergency temporary restraining order is **DENIED**. Dkt. No. 24.

The court **ORDERS** that the plaintiff's motion for the court to sanction defendants and their attorney is **DENIED**. Dkt. No. 28.

The court **ORDERS** that the defendants' motion to strike and for reconsideration is **DENIED AS MOOT**. Dkt. No. 30.

The court **ORDERS** that the plaintiff's motion pursuant to Fed. R. Civ. P. 55(a) for the Clerk of Court to enter defendants default is **DENIED**. Dkt. No. 45.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint (Dkt. No. 2), the screening order (Dkt. No. 23) and this order on defendant Sue Peters at Maxim Healthcare Services under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to

waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Peters to file a responsive pleading to the complaint within sixty days of service.

The court **DIRECTS** the Clerk of Court to add a John Doe defendant to the docket.

Dated at Milwaukee, Wisconsin this 21st day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**