WILLIE C. SIMPSON,

                         Plaintiff,

    v.                                                           Case No. 19-cv-1222-pp

CAPTAIN VANLANEN, JEAN LUTSEY,
SUE PETERS, CAPTAIN BAUMAN,
and JOHN ROE,

                         Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NOS. 66, 69) AND DISMISSING DEFENDANTS LUTSEY AND JOHN ROE**

---

Willie C. Simpson, an incarcerated person who is representing himself, is proceeding under 42 U.S.C. §1983 on Eighth Amendment claims against officials at Green Bay Correctional Institution. The defendants have moved for partial summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies for claims against two of the defendants before filing his complaint. Dkt. Nos. 66, 69. The plaintiff opposes the motions. Dkt. Nos. 74, 77. The court will grant the defendants' motions and dismiss two of the defendants on exhaustion grounds.

Case 2:19-cv-01222-PP   Filed 08/15/22   Page 1 of 22   Document 98

## I. Facts

### A. Procedural Background[1]

The plaintiff signed his initial complaint in this suit[2] on February 24, 2018, and the Dane County Circuit Court received it as filed on April 25, 2018. See W.D. Wis. Case No. 18-cv-467-jdp, Dkt. No. 1-1 at 5–15. The plaintiff named as defendants former Governor Scott Walker and former Secretary of the Department of Corrections Jon E. Litscher. Id. at 5–6. On June 21, 2018, counsel from the Wisconsin Attorney General's office, representing the defendants named in the complaint, filed a notice and petition for removal to the U.S. District Court for the Western District of Wisconsin. Id., Dkt. No. 1. On June 26, 2018, after the case had been removed to federal court, the defendants moved to transfer the case to the U.S. District Court for the Eastern District of Wisconsin. Id., Dkt. No. 2.

On January 11, 2019, District Judge James D. Peterson denied the motion to transfer and denied motions that the plaintiff had filed post-removal. Id., Dkt. No. 14. Judge Peterson explained that the complaint asserted claims that belonged in three separate lawsuits: that state officials had denied the plaintiff a parole hearing, had failed to properly treat him for human immunodeficiency virus ("HIV") and had interfered with his mail. Id. at 1. Judge Peterson explained that the plaintiff also had not named proper defendants for each of those claims. Id. at 2–3. Judge Peterson ordered the defendants to choose which of these three

---

[1] Although the court thoroughly described the procedural history of this case in a previous order, dkt. no. 23 at 1–3, additional details are necessary to understand the defendants' motions for summary judgment.

[2] The plaintiff has litigated seven lawsuits in this district since 2006.

separate lawsuits they wished to remove and to which they wanted to apply their filing fee. Id. at 3. He ordered the defendants to "explain whether they wish to remove any of the other lawsuits." Id. at 3–4. Judge Peterson explained that once the defendants chose which of the lawsuits they wished to remove, "they may renew their motion to transfer." Id. at 4. He advised the defendants that if they chose to remove one of the lawsuits for which the plaintiff had not named proper defendants, he would order the plaintiff "to amend his complaint or the case will be dismissed." Id.

On January 17, 2019, the defendants responded to Judge Peterson's order, explaining that they wanted to remove all three of the plaintiff's lawsuits and would pay two additional filing fees to do so. Dkt. No. 15.

On February 8, 2019—before Judge Peterson ruled—the plaintiff moved to amend his complaint and filed a proposed amended complaint. Id., Dkt. Nos. 17, 18. The proposed amended complaint named the Green Bay Correctional Institution; Wisconsin Governor Tony Evers; DOC Secretary Kevin A. Carr; several captains, sergeants and correctional officers at Green Bay; a John Roe defendant; Health Service Unit Manager Jean Lutsey; and Nurse Practitioner Sue Peters. Id., Dkt. No. 18 at 2–3.

On June 25, 2019, Judge Peterson granted the plaintiff's motion to amend the complaint. Dkt. No. 1 at 2. He directed the Clerk of Court in the Western District of Wisconsin to docket the amended complaint into two new cases that would address the plaintiff's claims related to his HIV treatments and the interception of his mail. Id. Judge Peterson would retain Case No. 18-cv-467 to address the plaintiff's claims about his parole. Id. He ordered the defendants to

3

renew their motion to transfer any or all of the three cases by July 9, 2019. Id. at 2, 4. The clerk's office in the Western District opened two new cases numbered 19-cv-524 and 19-cv-525. Id.

At the July 9, 2019 deadline, the state defendants (all defendants except Sue Peters) moved in Case No. 19-cv-525 for an order dismissing the case or transferring it to the Eastern District of Wisconsin. Dkt. No. 5. The defendants asserted that the plaintiff had sued defendants who worked at Green Bay Correctional Institution and that all his claims arose out of events that occurred there. Id. at ¶¶7–8. Because Green Bay is in the Eastern District, the defendants asserted that it was the district in which the case should have been filed. Id. at ¶¶8–9.

On August 21, 2019, after the parties completed briefing on the defendants' motion, Judge Peterson determined that the Eastern District of Wisconsin was not necessarily the proper district for the plaintiff's lawsuits about his HIV treatment and interception of his mail, but concluded that it was a more convenient venue for those claims. Dkt. No. 14 at 2–3. Judge Peterson also determined that the defendants' removal of the plaintiff's initial lawsuit to federal court was proper. Id. at 3–4. Judge Peterson granted the defendants' motions to transfer the two new lawsuits (Case Nos. 19-cv-524 and 19-cv-525) to the Eastern District of Wisconsin. Id. at 4. Judge Peterson kept the plaintiff's remaining lawsuit (Case No. 18-cv-467) in the Western District of Wisconsin for further proceedings. Id. at 4–5. On August 21, 2019, the Western District transferred Case Nos. 19-cv-524 and 19-cv-525 to the Eastern District of Wisconsin. Dkt. No.

4

14. Case No. 19-cv-525 became Case No. 19-cv-1222 and was randomly assigned to this court. Dkt. No. 15.

On September 30, 2020, this court entered an order screening the amended complaint as it relates to the plaintiff's claims about his inadequate HIV treatment. Dkt. No. 23. The court allowed the plaintiff to proceed on an Eighth Amendment claim of deliberate indifference against state defendants Vanlanen and Bauman, whom the plaintiff alleged denied him access to a basin to soak his infected toes. Id. at 8. The court allowed the plaintiff to proceed against non-state defendant Peters on an Eighth Amendment claim that she disregarded instructions to provide him Ensure and double-portion high-calorie meals three times a day. Id. The court allowed the plaintiff to proceed on an Eighth Amendment claim that Peters and Lutsey discontinued ointment that helped with skin irritation, even though the plaintiff had a prescription for the ointment. Id. The court also allowed the plaintiff to proceed against Lutsey and Peters for allegedly falsifying his medical records to cover up their deliberate indifference to his medical needs. Id. at 8–9. Finally, the court added a John Roe placeholder defendant for the plaintiff's claim that an unknown defendant had terminated his transport to Madison, Wisconsin for treatment with an HIV specialist. Id. at 7–8. The court dismissed Green Bay Correctional Institution as a defendant. Id. The court also dismissed the other defendants against whom the plaintiff is proceeding in the other case transferred to this district and assigned to a different court. Id. at 1, n.1; see Case No. 19-cv-1221-NJ.

On November 22, 2021, the court issued a scheduling order. Dkt. No. 58. The order set a January 6, 2022 deadline for the defendants to file motions for

summary judgment on the ground the plaintiff failed to exhaust the available administrative remedies. Id. at ¶2. The court also ordered the plaintiff to identify the John Roe defendant by February 22, 2022. Id. at ¶1. The court advised the plaintiff that if he did not identify the Roe defendant by that deadline, "the court may dismiss [the Roe defendant] from this case." Id.

On the January 6, 2022 deadline, Peters filed a motion for partial summary judgment based on the plaintiff's failure to exhaust his administrative remedies. Dkt. No. 60. The state defendants filed a motion requesting a short extension of time to file their motion for summary judgment. Dkt. No. 63. On January 7, 2022, the court ordered defendant Peters to refile her motion within one week because it did not include the text of certain federal and local rules as required by this court's local rules. Dkt. No. 64. In a separate order issued the same day, the court granted the state defendants' motion for an extension of time and ordered them to file their motion for summary judgment on exhaustion grounds by January 11, 2022. Dkt. No 65. Peters complied with the first order and refiled her motion and supporting materials the same day. Dkt. Nos. 66–68. On January 11, 2022, the state defendants filed their motion for summary judgment and supporting materials. Dkt. Nos. 69–72.

B.    Factual Background

1.    *Ointment Complaint – GBCI-2018-14513*

On July 5, 2018, the Green Bay Institution Complaint Examiner ("ICE") Office received inmate complaint GBCI-2018-14513. Dkt. No. 71 at ¶2; Dkt. No. 72-2 at 7. In that complaint, the plaintiff alleged that "Nurse Larson and HSU Staff discontinued [his] A&D Ointment treatment for skin breakouts caused by

6

[his] chronic medical conditions." Dkt. No. 72-2 at 5. The complaint alleged that the plaintiff had requested an appointment with a doctor about his skin condition, but that Larson had refused to refer him to a doctor or to "Nurse Peterson." Id.

On July 11, 2018, complaint examiner J. Perttu (who is not a defendant) met with defendant Lutsey, who reviewed the plaintiff's medical records. Id. at 2. Lutsey noted that Peters had discontinued an order for the ointment on May 14, 2018 because the plaintiff needed an appointment to renew that prescription. Id. On June 4, 2018, the plaintiff requested an appointment to restart his A&D ointment, and Larson saw the plaintiff for that request on June 8, 2018. Id. But the plaintiff "showed no objective signs or symptoms and was advised he would be placed on the list to see the ACP [Advanced Care Provider] regarding renewal of the A&D ointment." Id. Lutsey noted that, as of July 11, 2018, the plaintiff was on the waiting list to see an ACP and had not submitted another request for treatment based on new symptoms. Id. Perttu concluded that Larson did not refuse to schedule the plaintiff for an appointment with a doctor and recommended dismissing the complaint. Id. On July 18, 2018, the Reviewing Authority accepted Perttu's recommendation and dismissed the plaintiff's complaint. Id. at 4. The plaintiff did not appeal the dismissal of this complaint. Dkt. No. 71 at ¶4; Dkt. No. 72-2 at 6.

The plaintiff does not dispute that he filed this complaint and does not dispute that he did not appeal its dismissal. Dkt. No. 78 at ¶¶2–4. He asserts, however, that he filed an earlier inmate complaint about this issue, which exhausted his administrative remedies for his claim about the discontinuation of

A&D ointment. Id. The plaintiff points to inmate complaint GBCI-2017-27201, which he says he filed on October 19, 2017 against Lutsey and Peters for not following an earlier prescription issued by Dr. Vogelman (who is not a defendant) for A&D ointment and Ensure drink. Id. at ¶2; see Dkt. No. 72-1 at 7.

The plaintiff provided a copy of that complaint, in which he alleged that Lutsey and Peters "den[ied] [him] medical treatment for HIV waisting [*sic*] symptoms recommended by U.W. Immunology HIV specialist Dr. Vogelman." Dkt. No. 79-1 at 3. The plaintiff says that he spoke with Vogelman on October 3, 2017, via Telemed and told him that he had lost twenty pounds in 2016 and 2017. Id. He also told Vogelman about "the c[h]ronic infection in [his] big toe on [his] left [and] right foot and dizz[i]ness [and] light headedness from lack of nutrition." Id. Vogelman recommended a high-calorie diet with Ensure "to treat [his] HIV infection to streng[th]en [his] immune system and fight opp[or]tunistic infections." Id. The plaintiff says he wrote to Lutsey on October 9, 2017 to request this treatment, but that Nurse Utter responded and refused to provide the plaintiff the high-calorie diet that Vogelman had recommended. Id. at 4. The plaintiff asserted that he was "being denied treatment ordered by HIV spec[i]alist for no medical reasoning." Id.

The plaintiff attached the notes from his October 3, 2017 telemedicine appointment with Vogelman. Id. at 1. The notes discuss the plaintiff's concern about "22 pounds of weight loss." Id. Vogelman prescribed various new medications and noted that the plaintiff "[wa]s on doxazosin, metoprolol, multivitamin, pantoprazole, aspirin, atenolol and A and D ointment per other providers." Id. Vogelman recommended doubling "the portions of [the plaintiff's]

diet" and providing him "Ensure to prevent further weight loss." Dkt. No. 68-1 at 15. The plaintiff also attached his request directed to Lutsey about the recommendation for a "high pro[tein] calorie diet with ensure 10-3-2017 to treat HIV waisting [*sic*]." Dkt. No. 79-1 at 2. As the plaintiff alleged, Utter responded to this request and noted that Lutsey was "unavailable to review and respond to [the plaintiff's] correspondence." Id. Utter stated that Peters "[wa]s reviewing [his] current labs and monitoring [his] weight and double portions/ensure [were] not indicated at this time." Id.

On October 26, 2017, Perttu reviewed the plaintiff's inmate complaint about the denial of "a high calorie diet and Ensure." Id. at 5; Dkt. No. 68-1 at 4. Perttu met with Lutsey, who reviewed the plaintiff's medical records and confirmed the plaintiff's telemedicine appointment with UW Immunology and the recommendation for double portions and Ensure. Dkt. No. 79-1 at 5. The plaintiff's medical records show that an advanced care provider "ordered Ensure QID for three months, weight checks every month for six months and CMP and pre albumin." Id. Perttu concluded that the plaintiff had been provided appropriate care, even though the plaintiff "made it clear he is not satisfied with the care being offered to date," and recommended dismissing the complaint. Id. On November 3, 2017, the Reviewing Authority accepted Perttu's recommendation and dismissed the plaintiff's complaint. Dkt. No. 68-1 at 5.

On November 8, 2017, the plaintiff appealed the dismissal of his complaint. Id. at 19. The plaintiff maintained that the medical staff at Green Bay was not following the recommendations from the UW Health Clinic for a "high calorie diet along with ensure to treat the HIV." Id. He complained that there was no HIV

specialist at Green Bay and asserted that medical staff's decisions not to follow the UW Clinic's recommendations were "causing [him] to suffer HIV symptoms, waisting [*sic*] [and] infection, and the deter[i]oration of [his] immune system." Id. On November 14, 2017, a Corrections Complaint Examiner concluded that "[t]he Institution's decision was reasonable" and that the plaintiff had "provided no evidence to support a recommendation to overturn the decision." Id. at 7. The examiner recommended dismissing the appeal. Id. On November 22, 2017, the Office of the Secretary affirmed that recommendation and dismissed the plaintiff's appeal. Id. at 8; Dkt. No. 79-1 at 6.

### 2. *Medical Record Complaint – GBCI-2019-5309*

On March 19, 2019, the Green Bay ICE Office received inmate complaint GBCI-2019-5309. Dkt. No. 71 at ¶5; Dkt. No. 72-3 at 11. In this complaint, the plaintiff alleged that the guards in segregation who distributed medication were falsifying his medication record to make it appear as though he was refusing his medications so that they would be discontinued. Dkt. No. 72-3 at 11. The plaintiff insisted that he was "taking [his] medication as prescribed, if not [his] health would not be so excel[l]ent." Id. The complaint alleged that Larson came to the plaintiff's cell and asked him to sign a form showing he refused his medication. Id. at 11–12. The plaintiff asserted that he did not sign the form because he "[did] not wish to discontinue any of [his] medication." Id. at 12.

On March 20, 2019, Perttu met with Lutsey, who reviewed the plaintiff's medical records. Id. at 2. The plaintiff's records showed that he was "being offered his medication and on most occasions accept[ed] the medication." Id. Lutsey noted that every medication pass was documented to show whether the inmate

accepted or refused his medications that day. Id. She concluded that "there [was] no validity to [the plaintiff's] allegation that staff [were] refusing to document delivery of his mediations." Id. Based on Lutsey's review of the plaintiff's medical record, Perttu recommended dismissing the complaint. Id. A week later, the Reviewing Authority agreed with Perttu's recommendation and dismissed the plaintiff's complaint. Id. at 4.

On April 8, 2019, the Corrections Complaint Examiner's Office received the plaintiff's appeal of the decision to dismiss the complaint. Id. at 5, 16. The plaintiff reiterated his allegations about the segregation guards falsifying his medical records. Id. at 16. He alleged that the guards were required to scan his medication or identification into a laptop to make an electronic record of his acceptance or refusal of his medication. Id. He said the guards falsely "[were] makeing [sic] a record that [he was] not takeing [sic] [his] medication which HSU ver[i]fie[d]." Id. He clarified that the issue was not that guards refused to document that he received medication in a certain day but that the guards "refuse[d] to scan [his] medication dispensed to [him] into the electronic med. log to make a[n] accurate electronic record[,] which [gave] the false impression that [he] refuse[d] to take [his] medication." Id. at 16, 18.

On April 10, 2019, a Corrections Complaint Examiner reviewed the plaintiff's appeal. Id. at 6. The examiner noted that the plaintiff had "provided no evidence to support a recommendation to overturn the decision." Id. The examiner recommended dismissing the appeal. Id. On May 1, 2019, the Office of the Secretary accepted that decision and dismissed the plaintiff's appeal. Id. at 7.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if he or she shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, the non-moving party must provide more than assertions in support of his claims; he must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005); see also Cooper v. Haw, 803 F. App'x 942, 946 (7th Cir. 2020) (explaining that "argument alone is insufficient to avoid summary judgment").

### B. Exhaustion

Under the Prison Litigation Reform Act, an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated plaintiff must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d

12

1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and regardless of the nature of the alleged wrong. Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93). That means if the plaintiff failed to complete any step in the prison's exhaustion process *before* bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy the PLRA. Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001); Dole, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System to allow incarcerated persons to file complaints about policies, rules, living conditions and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee or agent of the DOC. Id. §310.05. Although an incarcerated

person "need not lay out the facts, articulate legal theories, or demand particular relief," the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). An incarcerated person must file a complaint with the ICE office within fourteen calendar days of the incident. Wis. Admin. Code §DOC 310.07(2). Each inmate complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Id. §310.07(5)–(6). The incarcerated person must appeal any adverse decision within fourteen days of the ICE's decision and await a final decision from the Office of the DOC Secretary. Id. §§310.12 & 310.13.

     C.    <u>Analysis</u>

Defendants Peters and Lutsey assert that the plaintiff failed to exhaust his administrative remedies for his claims that they discontinued his A&D ointment and fabricated his medical records. Dkt. No. 67 at 8–9; Dkt. No. 70 at 5. The defendants acknowledge that the plaintiff filed a complaint about the ointment claim but note that the plaintiff did not appeal the dismissal of that claim as Wisconsin's administrative rules required him to do. Dkt. No. 70 at 6. The defendants assert that, even if the plaintiff had appealed the dismissal of that complaint, he filed both that complaint and his complaint about the defendants falsifying his medical records *after* he had initiated this lawsuit. Id. They conclude that because §1997e(a) requires complete exhaustion *before* filing suit, the

plaintiff did not properly exhaust his administrative remedies before bringing this suit. Id. at 6–7.[3]

### 1.    *Ointment Complaint/Claim*

It is undisputed that the plaintiff did not appeal the dismissal of his 2018 inmate complaint about the discontinuation of A&D ointment. To fully exhaust a claim, Wisconsin's administrative rules require that an incarcerated person appeal the dismissal of his complaint to the Corrections Complaint Examiner's office and await a final decision from the Office of the Secretary. See Wis. Admin. Code §DOC 310.12(1). By failing to complete either of those steps, the plaintiff failed to adhere to "the specific procedures and deadlines established by the prison's policy." King, 781 F.3d at 893; see Pozo, 286 F.3d at 1025. He did not fully exhaust this complaint.

The plaintiff argues that he exhausted his administrative remedies for his claim about not receiving the A&D ointment by filing and appealing the dismissal of a 2017 complaint about the ointment. He cites GBCI-2017-27201, in which he complained about Lutsey and Peters not following the recommendation of Dr. Vogelman from the UW Health Clinic. But that complaint said nothing about A&D Ointment or the plaintiff's skin condition. It alleged that the defendants did not follow Vogelman's recommendation to provide the plaintiff a high-calorie diet and Ensure drinks to address his weight loss. Complaining about the denial of a high-calorie diet is not the same as complaining about the denial of ointment for a skin

---

[3] Defendant Peters concedes that the plaintiff exhausted his remedies for his claim that Peters refused to provide him Ensure and double-portion high-calorie meals three times a day. Dkt. No. 67 at 8 n.1. She does not seek summary judgment on that claim.

condition. The two different issues required the plaintiff to file two different complaints. As noted, the plaintiff is proceeding on a separate claim about the denial of Ensure and high-calorie meals. Dkt. No. 23 at 8. Complaint GBCI-2017-27201 about his diet addressed only that issue and was insufficient to alert prison officials about the alleged denial of the plaintiff's medical ointment. See Wis. Admin Code §DOC 310.07(5)–(6); Strong, 297 F.3d at 650.

The plaintiff asserts that his complaint more broadly complained about the defendants not following Vogelman's recommendations from the October 3, 2017 appointment. Dkt. No. 77 at 3–4. He points to Vogelman's notes from that appointment, which mention that the plaintiff was on "A and D ointment per other providers." Id. at 5; Dkt. No. 79-1 at 1. The plaintiff appears to be asserting that his complaint about Lutsey and Peters not following one portion of Vogelman's orders adequately notified the prison of his allegation that the defendants were not following *every* part of Vogelman's orders.

This argument fails for two reasons. First, as noted above, the plaintiff's complaint addressed only his high-protein diet. Nothing in his complaint more broadly alleged a failure to follow all of Vogelman's recommendations or orders. The ICE accurately described the plaintiff's complaint as one that the Health Services Unit "[was] not following the off-site providers recommendation that he receive a high calorie diet and Ensure." Dkt. No. 68-1 at 3. If the complaint *had* raised both issues, the ICE might have been required to reject the complaint for containing more than one issue in a single complaint. See Wis. Admin Code §DOC 310.07(5). Second, Vogelman's notes from this visit do not contain either an order or a recommendation about the A&D ointment. The only mention of the ointment

is the line quoted above noting that "other providers" prescribed the ointment to the plaintiff. Dkt. No. 79-1 at 1. Vogelman did not recommend that the prison alter, continue or discontinue the plaintiff's other medications generally or the ointment specifically. See Dkt. No. 68-1 at 14–15.

Nothing in the plaintiff's 2017 complaint alerted the prison that he believed Lutsey and Peters were discontinuing or denying his existing prescription for A&D ointment. Because the plaintiff has not provided evidence showing that he raised and properly exhausted this issue in any inmate complaint, the court concludes that he did not exhaust his administrative remedies for this claim. The court must dismiss this claim without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

2.    *Fabricating Records Complaint*

It is undisputed that the plaintiff filed an inmate complaint about prison officials fabricating his medical records and fully appealed the dismissal of that complaint. Although the plaintiff did not name Lutsey and Peters in this complaint, that does not mean that the complaint failed to exhaust his administrative remedies for this claim. See Jones, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

This claim faces a different problem. On February 24, 2018, the plaintiff signed the complaint that initiated this lawsuit and the state court received it on April 25, 2018. See W.D. Wis. Case No. 18-cv-467-jdp, Dkt. No. 1-1 at 5–15. The plaintiff did not file an inmate complaint about prison officials fabricating his

medical records until March 2019 and did not fully exhaust his remedies for that claim until May 1, 2019, when the Office of the Secretary dismissed his appeal. Dkt. No. 72-3 at 7, 11. The plaintiff does not dispute that he filed his inmate complaint about this issue only after he filed this §1983 lawsuit. Dkt. No. 78 at ¶5; Dkt. No. 79 at ¶13.

A prisoner may file an amended complaint that includes new, exhausted claims, rather than filing an entirely new lawsuit with those new claims. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005). But the plaintiff filed his amended §1983 complaint naming Lutsey and Peters on February 8, 2019—months before exhausting his administrative remedies for his claim that they falsified his medical records. W.D. Wis. Case No. 18-cv-467-jdp, Dkt. No. 18. That the plaintiff exhausted his administrative remedies for that claim while his lawsuit was pending is not sufficient. "Section 1997e(a) says that exhaustion must *precede* litigation. 'No action shall be brought' *until* exhaustion has been completed." Ford, 362 F.3d at 398 (emphasis added); see Perez, 182 F.3d at 535.

The plaintiff both filed this lawsuit and amended his complaint *before* he filed his inmate complaint alleging that the defendants falsified his medical records and well before he completed the appeals process for that complaint. He has not exhausted his administrative remedies for this claim, and the court must dismiss it without prejudice. See Ford, 362 F.3d at 401.

3.      *The Plaintiff's Response*

The plaintiff insists that the court should not dismiss his claims against Peters and instead should remand those claims to the Dane County Circuit Court. Dkt. No. 74. He asserts that this court lacks subject-matter jurisdiction

over his §1983 claims against Peters, who "did not give notice of removal of the action from state court pursuant to 28 USC 1446(B) after being served with the complaint." Id. at 2.

This argument has no merit. The plaintiff's initial complaint, which he filed in state court under 42 U.S.C. §1983, did not name Peters as a defendant. That complaint named only former Governor Scott Walker and former Secretary of the Department of Corrections Jon E. Litscher. W.D. Wis. Case No. 18-cv-467-jdp, Dkt. No. 1-1 at 5–6. Peters had no obligation to respond to a complaint which did not name her as a defendant. Attorneys for the Department of Corrections, representing the only defendants named in the complaint, filed a notice of removal to the Western District of Wisconsin under 28 U.S.C. §§1441 and 1446 in June 2018. Id., Dkt. No. 1. Peters had no obligation to consent to removal because—again—she had not yet been named as a defendant and was not a party to the lawsuit. The case was removed to federal court and docketed in the Western District on June 21, 2018. Id. The plaintiff did not challenge the court's subject-matter jurisdiction, and the court did not *sua sponte* consider the question.

The plaintiff named Peters as a defendant for the first time in his amended complaint, which he filed on February 8, 2019—almost seven months after the Western District took jurisdiction. Id., Dkt. No. 18. That court ordered the Clerk of Court to open a new case for the plaintiff's claim alleging that the defendants (including Peters) denied him proper medical treatment for his HIV symptoms. Dkt. No. 1. That court also determined that the defendants' removal of the plaintiff's lawsuit to federal court was proper. Id. at 3–4. On August 22, 2019,

that new case was transferred to the Eastern District of Wisconsin and docketed in this court. Dkt. No. 15. After this court screened the amended complaint and allowed the plaintiff to proceed against Peters, dkt. no. 23, and after the court addressed the parties' motions for reconsideration of the screening order and other relief, dkt. no. 51, Peters filed a waiver of service, dkt. no. 53. At no point did the plaintiff challenge this court's subject-matter jurisdiction over Peters and the court had no reason to question its jurisdiction.

The amended complaint (which named Peters for the first time) never was pending in Dane County Circuit Court, so the court cannot "remand" it to that court. By the time the plaintiff named Peters as a defendant, the Western District of Wisconsin had exercised its jurisdiction under 28 U.S.C. §§1441(a) and 1446. That court had original jurisdiction over the plaintiff's §1983 lawsuit because the lawsuit raised claims "arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." 28 U.S.C. §1441(c)(A); see 28 U.S.C. §§1331, 1343. That includes the plaintiff's Eighth Amendment claims against Peters. By the time Peters waived service of the summons, this court already had assumed jurisdiction over the plaintiff's amended complaint under §1331 and the order from the Western District transferring the case to this district. Dkt. No. 14. The court has jurisdiction over *all* claims in the plaintiff's amended complaint, not just those also contained in the original complaint filed in state court. Peters had no obligation to file a notice of removal of the plaintiff's amended complaint to federal court because it *already* was in federal court and had been properly transferred to this court. Nor did she

have any obligation to remove the case to the Eastern District of Wisconsin because it *already* was pending here when she waived service.

The Western District of Wisconsin properly assumed jurisdiction over the plaintiff's entire case (not just some of his claims) when the defendants removed the case to that court. The Western District retained jurisdiction when the plaintiff filed his amended complaint naming Peters as a defendant. That court properly transferred the case to this district and this court, which has subject-matter jurisdiction over the plaintiff's lawsuit under 28 U.S.C. §1331. The plaintiff's challenge to the court's jurisdiction over his claims against Peters is frivolous.[4]

D.  Roe Defendant

The court's November 22, 2021 scheduling order gave the plaintiff a deadline of February 22, 2022 by which to identify the John Roe defendant named in the amended complaint. Dkt. No. 58 at ¶2. By February 22, 2022, the plaintiff neither identified the John Roe defendant or requested additional time to do so. Because the plaintiff has not diligently pursued his claim against the John Roe defendant, the court will dismiss this claim and dismiss the John Roe defendant with prejudice. See Civil Local Rule 41(c) (E.D. Wis.) ("Whenever it

---

[4] Although the Seventh Circuit has held that that in cases where exhaustion is contested (as here), the first step in the court's determination is to hold a hearing on exhaustion, Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008), "'there is no reason to conduct an evidentiary hearing' in a 'situation [where] there are no disputed facts regarding exhaustion, only a legal question.' *Doss v. Gilkey*, 649 F. Supp. 2d 904, 912 (S.D. Ill. 2009)." Aguirre v. Witek, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010). There are no disputed facts for the court to resolve, so there is no need for it to hold a hearing.

appears to the Court that the plaintiff is not diligently prosecuting the action . . . the Court may enter an order of dismissal with or without prejudice.").

On May 2, 2022, the court received from the plaintiff a motion for summary judgment. Dkt. No. 84. Defendants Vanlanen, Bauman and Lutsey have filed a motion asking the court to strike that motion. Dkt. No. 89. The court will issue a separate order ruling on these motions.

## III. Conclusion

The court **GRANTS** the defendants' motions for partial summary judgment on exhaustion grounds. Dkt. Nos. 66, 69. The court **DISMISSES WITHOUT PREJUDICE** the plaintiff's claims that defendants Lutsey and Peters discontinued his A&D ointment and falsified his medical records.

Because there are no exhausted claims against defendant Lutsey, the court **ORDERS** that Lutsey is **DISMISSED** as a defendant.

The court **DISMISSES WITH PREJUDICE** the John Roe defendant because the plaintiff has failed to prosecute his claim against that defendant.

The court will enter a separate order setting new deadlines for discovery and dispositive motions on the plaintiff's remaining claims against defendants Vanlanen, Bauman and Peters, as well as ruling on the plaintiff's motion for summary judgment and the defendants' motion to strike.

Dated in Milwaukee, Wisconsin this 15th day of August, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**